T.C. Memo. 2008-287

UNITED STATES TAX COURT

RUSSELL D. KINNEY AND HEATHER R. KINNEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14816-06.          Filed December 22, 2008.

Russell D. Kinney and Heather R. Kinney, pro sese.

<u>Ann L. Darnold</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income taxes of $4,162 and $5,984 for 2003
and 2004, respectively, as well as section 6662(a) accuracy-

related penalties of $832 and $1,197 for 2003 and 2004, respectively.[1]

After concessions[2] the issues for decision are:

(1) Whether during 2003 and 2004 petitioners' direct marketing activity constituted an activity not engaged in for profit;

(2) whether petitioners are entitled to deductions claimed on their Schedules C, Profit or Loss From Business, for expenses not related to the direct marketing activity for 2003 and 2004;

(2) whether petitioners are entitled to deduct additional home mortgage interest of $336 for 2003;

(3) whether petitioners have substantiated unreimbursed employee expenses in excess of expenses conceded by respondent for 2003;

(4) whether petitioners are liable for the section 6662(a) accuracy-related penalties.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]Respondent concedes that petitioners substantiated the union dues and welding license expenses claimed on Schedule A, Itemized Deductions, for 2003 as unreimbursed employee expenses, but the parties dispute the remaining unreimbursed employee expenses. Respondent also concedes that petitioners are entitled to a $309 home mortgage interest deduction for 2003, but the parties dispute the remaining home mortgage deduction.

FINDINGS OF FACT

The parties have stipulated some of the facts, which we incorporate in our findings by this reference. Petitioners resided in Oklahoma when their petition was filed. Petitioners were married and filed joint Federal income tax returns for the years at issue, but they were separated at the time of trial.

During the years at issue petitioners received wage and other income from several sources. Heather R. Kinney (Mrs. Kinney) was employed by Women's Health Group, Inc., earning $28,329 and $20,492 for 2003 and 2004, respectively. Russell D. Kinney (Mr. Kinney) was a member of a local union and was employed as a welder by K & L Smith Mechanical, Inc. (K & L Smith), earning $37,454 and $49,155 in 2003 and 2004, respectively. Petitioners also reported "gaming" income of $7,300 and $38,780 for 2003 and 2004, respectively.

I.  Petitioners' Direct Marketing and Prospective Welding Businesses

A.  Direct Marketing Activity

In 2001 petitioners became involved with Melaleuca, Inc. (Melaleuca), a direct marketing company selling health, wellness, and household products through individuals (distributors). Melaleuca is structured as an upline-downline system in which distributors earn commissions when they recruit new distributors (downlines) and when their downlines recruit more distributors. Distributors also receive commissions on purchases of products by

their downlines. Melaleuca's distributors qualify for discounts on Melaleuca products. Petitioners were recruited as downlines by another distributor (upline). Before their involvement with Melaleuca petitioners had no experience in running a business or conducting direct marketing activities.

Initially petitioners concentrated on recruiting downlines, but because of the $300 initiation fee that prospective downlines had to pay, petitioners were not able to attract anyone. Mrs. Kinney sold some products to neighbors, friends, and coworkers. After petitioners realized they could not recruit downlines, they considered quitting the Melaleuca activity but decided to continue selling products because of their inventory. In addition, they remained hopeful that they would eventually sign up downlines. Petitioners had been told by their upline that if their potential downlines ordered Melaleuca products at petitioners' volume, petitioners would recoup their startup costs in approximately 1 year. However, petitioners did not calculate how many downlines they would have to recruit to make their marketing activity profitable. Both petitioners continued their full-time jobs.

Petitioners owned a mobile home[3] in a trailer park, which after they ceased using it as a residence, they converted for use

_____

[3]Mr. Kinney purchased the mobile home in 1986, and petitioners used it as their primary residence until 2003.

exclusively as an office for their Melaleuca activity, including storing inventory. Although they purchased a computer and printer for their Melaleuca activity, petitioners did not have Internet service at the mobile home, and they placed online orders with Melaleuca on their computer at home.

When petitioners became Melaleuca distributors, they consulted Susan Boyer (Ms. Boyer) regarding business records they had to maintain. Although petitioners obtained computer software from Ms. Boyer, they recorded all items on paper and retained receipts. Petitioners did not maintain a separate bank account for the Melaleuca activity. Petitioners never generated a profit from the Melaleuca activity. In 2003 and 2004 petitioners reported gross sales of $412 and $595, respectively.

B. Preparations To Start Welding Business

In the latter part of 2003 Mr. Kinney prepared to start a welding business because he anticipated receiving orders for pipe fabrication from an acquaintance. In 2004 Mr. Kinney constructed gates, built a pole building, and purchased a welding machine and other supplies. However, for reasons beyond Mr. Kinney's control, he did not actually begin to operate a business.

II. Petitioners' Federal Income Tax Returns

Petitioners timely filed their 2003 and 2004 Forms 1040, U.S. Individual Income Tax Return (2003 and 2004 returns). Ms.

Boyer prepared the returns. Schedule C attached to the 2003 return (2003 Schedule C) described petitioners' Melaleuca activity as "Marketing". Besides the Melaleuca expenses, on the 2003 Schedule C petitioners also claimed mileage for vehicles and expenses for one cellular phone that pertained to Mr. Kinney's employment at K & L Smith.

Petitioners' Schedule C attached to the 2004 return (2004 Schedule C) described petitioners' business activity as "Marketing Welding". Marketing referred to the Melaleuca activity, and welding referred to Mr. Kinney's prospective welding business. Gross income of $595 reported on the 2004 Schedule C represented petitioners' gross sales of Melaleuca products. In addition to claiming deductions for the Melaleuca activity and for the prospective welding business, on the 2004 Schedule C petitioners also claimed deductions for (1) mileage for vehicles and expenses of one cellular phone that pertained to Mr. Kinney's employment at K & L Smith and (2) work clothes expenses for both petitioners' jobs. The 2004 Schedule C did not separately identify the expenses related to the Melaleuca activity, the prospective welding business, and petitioners' employment.

Petitioners deducted the following Schedule C expenses on their 2003 and 2004 returns:

| Sch. C expense category | 2003 | 2004 |
|---|---|---|
| Car and truck | $8,795 | $9,217 |
| Commissions and fees | 1,542 | -0- |
| Depreciation | 5,591 | -0- |
| Legal and professional services | 418 | 649 |
| Office expense | 313 | -0- |
| Rent or lease | | |
|   Vehicles, machinery and equipment | -0- | 273 |
|   Other business property | 3,246 | 7,500 |
| Repairs and maintenance | 1,225 | 676 |
| Supplies | 802 | 2,813 |
| Taxes and licenses | -0- | 107 |
| Travel | 341 | -0- |
| Meals and entertainment | 646 | -0- |
| Other | | |
|   Toll | -0- | 85 |
|   Meetings | 108 | -0- |
|   Phones | 2,911 | 1,180 |
|   Work clothes | -0- | 484 |
|   Tools | -0- | 400 |
|   Total | 25,938 | 23,384 |

On the 2003 return petitioners itemized their deductions, attaching to the return Schedule A, Itemized Deductions (2003 Schedule A). On the 2003 Schedule A petitioners reported home mortgage interest of $9,587 and unreimbursed employee expenses of $2,186.[4] After applying the section 67(a) limitation, petitioners deducted $1,158 of unreimbursed employee expenses. Petitioners attached to their return a Form 2106-EZ, Unreimbursed

---

[4]For 2004 petitioners reported unreimbursed employee expenses totaling $2,234 but did not claim them because such expenses did not exceed the 2-percent limitation under sec. 67(a).

Employee Business Expenses, but the form did not show how the amount was calculated.

## III. Notice of Deficiency

In the notice of deficiency respondent disallowed all of petitioners' 2003 and 2004 Schedule C deductions on the following grounds:  "no amount in excess of zero has been adequately substantiated as to amount of deductibility.  In addition, it has not been established that the requirements of Internal Revenue Code Section 274 have been met."  For 2003 respondent also disallowed $1,803 of petitioners' itemized deductions because of lack of substantiation.[5]  This amount consisted of home mortgage interest expense of $645 and unreimbursed employee expenses of $1,158.  Respondent also determined that petitioners were liable for accuracy-related penalties under section 6662(a) of $832 and $1,197 for 2003 and 2004, respectively.

### OPINION

The Commissioner's determinations are presumed correct, and the taxpayer ordinarily bears the burden of proving that those determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any deduction claimed.  INDOPCO, Inc. v.

---

[5]Respondent also made computational adjustments to self-employment tax and the sec. 24(a) child tax credit for 2004.

Commissioner, 503 U.S. 79, 84 (1992).  Petitioners do not contend that section 7491(a) shifts the burden of proof to respondent, and petitioners have not established that they satisfy the section 7491(a)(2) requirements.

I.   Schedule C Deductions Related to the Melaleuca Activity

   A.   In General

Respondent argues that petitioners may not deduct the Schedule C expenses attributable to the Melaleuca activity because the Melaleuca activity did not constitute a trade or business and was not engaged in for profit.[6]  Section 162(a) allows a taxpayer to deduct ordinary and necessary expenses of carrying on the taxpayer's trade or business.  To be engaged in a trade or business with respect to which deductions are allowable under section 162, "the taxpayer must be involved in the activity with continuity and regularity", and "the taxpayer's primary purpose for engaging in the activity must be for income or profit."  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

Section 183(a) restricts taxpayers from deducting losses for an activity that is not engaged in for profit.  Section 183(c) defines "activity not engaged in for profit" as "any activity

_____

[6]In the notice of deficiency respondent disallowed Schedule C deductions for lack of substantiation.  In the pretrial memorandum and at trial respondent also contended that petitioners' Melaleuca activity did not constitute a trade or business engaged in for profit within the meaning of secs. 162 and 183.  Petitioners do not object on procedural grounds to respondent's argument under sec. 183.

other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

Absent a stipulation to the contrary, see sec. 7482(b)(2), this case is appealable to the Court of Appeals for the Tenth Circuit, see sec. 7482(b)(1), which has applied the dominant or primary objective standard to test whether an alleged business activity is conducted for profit, Hildebrand v. Commissioner, 28 F.3d 1024, 1027 (10th Cir. 1994), affg. Krause v. Commissioner, 99 T.C. 132 (1992); Cannon v. Commissioner, 949 F.2d 345, 350 (10th Cir. 1991), affg. T.C. Memo. 1990-148;[7] Oswandel v. Commissioner, T.C. Memo. 2007-183. Under the standard applied by the Court of Appeals for the Tenth Circuit, the dominant or primary objective of petitioners' Melaleuca activity must be to earn a profit. Whether an activity was engaged in for profit is a factual determination to be resolved on the basis of all the surrounding facts and circumstances. Hildebrand v. Commissioner, supra at 1027.

Factors enumerated in regulations under section 183 generally are utilized in determining whether the requisite

---

[7]In both Hildebrand v. Commissioner, 28 F.3d 1024, 1027 (10th Cir. 1994), affg. Krause v. Commissioner, 99 T.C. 132 (1992), and Cannon v. Commissioner, 949 F.2d 345, 350 (10th Cir. 1991), affg. T.C. Memo. 1990-148, the Court of Appeals for the Tenth Circuit applied the dominant or primary objective test at the partnership level in analyzing whether a partnership was engaged in an activity for profit under sec. 183.

profit objectives are present under section 162. See <u>Cannon v. Commissioner</u>, <u>supra</u> at 348; <u>Krause v. Commissioner</u>, <u>supra</u> at 168. Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors to be considered in determining whether a taxpayer has the requisite profit objective. The factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. No single factor is determinative, and not all factors are applicable in every case. See <u>Abramson v. Commissioner</u>, 86 T.C. 360, 371 (1986).

    B.   <u>Applying the Factors</u>

We analyze the most pertinent of the factors listed in the regulation to illustrate why we conclude that petitioners' Melaleuca activity was not an activity engaged in for profit.

        1.   <u>The Manner in Which Petitioners Conducted the Activity</u>

In deciding whether a taxpayer has conducted an activity in a businesslike manner we consider: (1) Whether complete and

accurate books and records were maintained; (2) whether the activity was conducted in a manner substantially similar to other activities of the same nature that were profitable; and (3) whether changes in operating methods, adoption of new techniques, or abandonment of unprofitable methods were done in a manner consistent with an intent to improve profitability. See Engdahl v. Commissioner, 72 T.C. 659, 666-668 (1979); sec. 1.183-2(b)(1), Income Tax Regs.

When petitioners signed up as downlines, they consulted Ms. Boyer regarding necessary recordkeeping and obtained from her a computer program and a book for recording "everything". Mr. Kinney testified that petitioners did not use the software but instead contemporaneously recorded all items in the book[8] and retained receipts. We are not convinced that petitioners' recordkeeping represented anything other than an effort to substantiate expenses claimed on their return. For a taxpayer's books and records to indicate a profit motive, the taxpayer should use the books and records "as analytic or diagnostic tools in an effort to achieve profitability", Nissley v. Commissioner, T.C. Memo. 2000-178, for example, to enable a taxpayer to cut expenses, increase profits, and evaluate the overall performance of the operation, see Golanty v. Commissioner, 72 T.C. 411, 430

---

[8]Petitioners did not give the book to the IRS during the audit and did not introduce the book into evidence.

(1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Petitioners could not meaningfully analyze profitability and make informed decisions regarding their Melaleuca activity on the basis of the collection of receipts and invoices they retained. Although they believed they would recoup their startup costs if they could recruit some downline distributors, they did not estimate what sales level they had to maintain to break even. Although Mrs. Kinney prepared spreadsheets to assist the tax return preparation process, petitioners did not use the spreadsheets to analyze profitability of the business or to identify cost-cutting measures.

Petitioners failed to maintain certain records that individuals pursuing a similar activity with a profit objective are expected to maintain. See Nissley v. Commissioner, supra. In addition, the records petitioners did maintain were neither complete nor accurate. For example, for 2004 petitioners reported $595 in gross sales but retained records reflecting only $393 in gross sales.

Petitioners also did not prove that they made changes to their business activity in order to generate a profit. For example, petitioners offered no evidence that they considered switching companies or that they consulted successful direct marketers about how to improve sales and reduce expenses. Despite their losses, petitioners continued to buy products

without increasing their sales volume or changing their method of operation.  We conclude that petitioners did not conduct their Melaleuca activity in a businesslike manner.

2.  The Expertise of Petitioners or Their Advisers

Preparation for an activity by an extensive study of its accepted business, economic, and scientific practices, or consultation with those who are experts therein, may indicate a profit objective.  Engdahl v. Commissioner, supra at 668; sec. 1.183-2(b)(2), Income Tax Regs.  Efforts to gain experience and a willingness to follow expert advice may indicate a profit motive.  See, e.g., Dworshak v. Commissioner, T.C. Memo. 2004-249.

Before signing up as downlines, petitioners never engaged in any direct marketing activity or any other type of sales business.  Petitioners relied only on advice from another Melaleuca distributor.  Under a direct marketing system like Melaleuca an upline is an interested party rendering advice to promote his own interest.  See Ogden v. Commissioner, T.C. Memo. 1999-397 (direct marketers "may be biased when discussing * * * [their direct marketing activity] because they have a natural desire to advance the organization and/or obtain income from a downliner."), affd. 244 F.3d 970 (5th Cir. 2001).  Petitioners never sought advice from an independent party.  On balance we conclude that petitioners did not have, and did not acquire from others, a sufficient grounding in direct marketing.

### 3. Petitioners' Time and Effort Devoted to the Activity

The fact that a taxpayer devotes personal time and effort to carry on an activity may indicate an intention to derive a profit, particularly where there are no substantial personal or recreational elements associated with the activity. Sec. 1.183-2(b)(3), Income Tax Regs.

Mr. Kinney's testimony about the amount of time petitioners devoted to the Melaleuca activity was confusing and unclear. Mr. Kinney testified that Mrs. Kinney spent a couple of hours weekly trying to sell Melaleuca products and that he spent approximately 1 hour daily filling out order sheets. However, Mr. Kinney testified he placed orders for merchandise once a month. We cannot reconcile Mr. Kinney's testimony about the amount of time he and his wife spent on the activity[9] with the small amount of sales reported, nor do we understand what he did for an hour a day. Consequently we disregard Mr. Kinney's testimony on this point. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Petitioners maintained full-time jobs during the years at issue, and in 2004 Mr. Kinney also devoted time and effort to his prospective welding business. In addition, Mrs. Kinney started

---

[9]Copies of customer receipts indicate that in 2003 and 2004 petitioners made less than two sales per month, and the average sale was $21. We find it hard to believe that this sales volume required Mr. Kinney to spend 1 hour daily filling out order sheets.

gambling at some point and spent far more time gambling during the years at issue than selling Melaleuca products or recruiting downlines. Petitioners' other activities left little time for the Melaleuca activity.

    4. <u>Petitioners' History of Income or Loss From the Activity</u>

A taxpayer's history of income or loss with respect to an activity may indicate the presence or absence of a profit objective. See <u>Golanty v. Commissioner</u>, <u>supra</u> at 426; sec. 1.183-2(b)(6), Income Tax Regs. However, "a series of startup losses or losses sustained because of unforeseen circumstances beyond the control of the taxpayer may not indicate a lack of profit motive." <u>Kahla v. Commissioner</u>, T.C. Memo. 2000-127 (citing <u>Engdahl v. Commissioner</u>, 72 T.C. at 669, and section 1.183-2(b)(6), Income Tax Regs.), affd. without published opinion 273 F.3d 1096 (5th Cir. 2001).

Petitioners' activity never generated a net profit. Their Melaleuca activity mostly provided them discounts on products for personal use and deductions for personal expenses, such as expenses related to their car, cellular phone, Internet service, and mobile home. Although the activity was in its early years, petitioners recognized that they needed to build a downline organization to maintain a profit, yet they did nothing to reduce costs or terminate the activity when they were unsuccessful at recruiting downline distributors. We fail to see how petitioners

could recoup their cumulative losses under these circumstances. We conclude petitioners' substantial losses from the activity indicate that the Melaleuca activity was not engaged in for profit.

### 5. Elements of Personal Pleasure or Recreation

The existence of personal pleasure or recreation relating to the activity may indicate the absence of a profit objective. See sec. 1.183-2(b)(9), Income Tax Regs. However, an activity is not treated as an activity not engaged in for profit merely because the activity may have recreational or pleasurable elements. Id. Petitioners' Melaleuca activity was so intertwined with social and recreational elements that it is difficult to discern what part, if any, of the activity was business and what part was pleasure. For example, on a January 2003 trip to a cheerleading convention[10] petitioners invited their acquaintances to dinner during which they talked about cheerleading and Melaleuca products. Petitioners treated the cost of the dinner as a deductible expense. During another personal trip to New Mexico, Texas, and Las Vegas, Nevada, petitioners delivered products to and discussed Melaleuca with spouses of persons whom Mr. Kinney had met through his employment. Petitioners deducted the cost of meals and some lodging expenses. We conclude that elements of

---

[10]During the years at issue petitioners' daughter was a cheerleader.

personal pleasure and recreation indicate that petitioners did not engage in the Melaleuca activity with a primary objective of realizing a profit.

### 6. Conclusion

The remaining factors either do not apply or do not favor petitioners' position. After considering the factors listed in section 1.183-2(b), Income Tax Regs., and the facts and circumstances of this case, we conclude that petitioners did not engage in the Melaleuca activity with the primary objective of realizing a profit. Accordingly, we hold that petitioners' Melaleuca activity during the years in issue was not an activity engaged in for profit within the meaning of sections 162 and 183.

## II. Deductibility of 2003 and 2004 Schedule C Expenses

### A. 2003 Schedule C Expenses

#### 1. Expenses Related to the Melaleuca Activity

Because we have concluded that petitioners did not engage in the Melaleuca activity for profit, we now turn our analysis to what deductions, if any, petitioners may claim under section 183(b)(1) and (2). Section 183(b)(1) permits deductions which are otherwise allowable without regard to whether the activity is engaged in for profit, such as State and local taxes and interest. Section 183(b)(2) allows deductions that would be allowable if the activity were engaged in for profit but only to

the extent of gross income received from the activity, reduced by deductions under section 183(b)(1).

For 2003 petitioners provided records showing they paid Tulsa County tax of $50, an expense that appears to be deductible under section 164(a) and allowable under section 183(b)(1). Petitioners also paid rent for the lot for the mobile home totaling $1,320.[11]  We are satisfied, on the basis of Mr. Kinney's testimony, that petitioners used the mobile home exclusively for the Melaleuca activity.  We find that petitioners may deduct the county tax in full and may deduct the lot rent expenses up to $362, the excess of the $412 gross profit from the Melaleuca activity over the county tax.  Given the section 183(b)(2) limitation, we do not need to address whether petitioners substantiated other deductions related to the Melaleuca activity on their 2003 Schedule C.

2.  Expenses Related to Mr. Kinney's Employment Erroneously Claimed on the 2003 Schedule C

The 2003 Schedule C included mileage and cellular phone expenses related to Mr. Kinney's employment at K & L Smith. Although those deductions should have been claimed on petitioners' 2003 Schedule A as miscellaneous itemized deductions subject to the 2-percent adjusted gross income limitation under

_____

[11]The record does not establish under which category of the 2003 Schedule C petitioners claimed the lot rent expense and the county tax.

section 67(a), we consider whether petitioners are entitled to these deductions.

A taxpayer may deduct unreimbursed employee expenses as an ordinary and necessary business expense under section 162. <u>Lucas v. Commissioner</u>, 79 T.C. 1, 6 (1982). An employee cannot deduct such expenses to the extent that the employee is entitled to reimbursement from his or her employer for expenditures related to his or her status as an employee. <u>Id.</u> at 7. Along with other miscellaneous itemized deductions, unreimbursed employee expenses are subject to the 2-percent limitation of section 67(a). We accept as credible Mr. Kinney's testimony that K & L Smith did not reimburse him for mileage and cellular phone expenses.

### (a) Car and Truck Expenses

Petitioners claimed $8,795 in car and truck expenses on the 2003 Schedule C, which included van and truck expenses for the Melaleuca activity and truck expenses for Mr. Kinney's employment. Passenger automobiles and any other property used as a means of transportation are listed property, see sec. 280F(d)(4)(A)(i) and (ii), and these expenses are subject to the provisions of section 274(d). Section 274(d) requires taxpayers to provide adequate records or sufficient other evidence establishing the amount, time, place, and business purpose of the expense to corroborate the taxpayer's statements. Mr. Kinney claimed that he maintained a contemporaneous log, but he did not

introduce it into evidence.  To substantiate mileage expenses, petitioners presented calendars that used an alphabetical code for indicating business or personal use of their vehicles. Although petitioners' code system separates business and personal mileage, it does not separate how many miles were driven for the Melaleuca activity and for Mr. Kinney's employment.  The calendars have meager explanations about the purpose of a few trips; only a few entries describe trip destinations.  We conclude the calendars do not satisfy the strict substantiation requirements of section 274(d), and we sustain respondent's determination disallowing car and truck expenses.

### (b) Cellular Phone Expenses

On the 2003 Schedule C petitioners claimed cellular phone expenses under the category "other expenses".  Petitioners introduced into evidence cellular phone bills that establish that they subscribed to a family plan for two cellular phones, one for Mr. Kinney and one for Mrs. Kinney.  Mr. Kinney did not use any other cellular phone.  Cellular phones are listed property, see sec. 280F(d)(4)(A)(v), and section 274(d) provides that no deduction shall be allowed unless the taxpayer substantiates, inter alia, the business use of the property.  Petitioners did not offer a detailed breakdown of personal and business use of Mr. Kinney's cellular phone.  Petitioners failed to establish the additional charges, if any, they incurred because of Mr. Kinney's

employment.  Therefore, petitioners are not entitled to the cellular phone expense deduction.

B.    The 2004 Schedule C Expenses

1.    Expenses Related to the Melaleuca Activity

For 2004 petitioners did not claim any deductions that are allowable under section 183(b)(1).  As discussed above, section 183(b)(2) permits petitioners to offset expenses against gross income from the Melaleuca activity.  Petitioners substantiated the following:  (1) $330 rent for the mobile home lot for January through March 2004 and (2) $238 of utilities attributable to the mobile home office.  These substantiated expenses total $568, leaving a small discrepancy between income from the activity and substantiated expenses.

Petitioners claimed the following deductions related to the Melaleuca activity.

(a) Car and truck expenses ($9,217)

As discussed above, petitioners' mileage records do not satisfy the substantiation requirements of section 274(d).  In addition, the records do not separate miles driven for the Melaleuca activity and miles driven for Mr. Kinney's employment.  Accordingly, none of the car and truck expenses may be deducted as an expense of the Melaleuca activity.

(b) <u>Legal and Professional Services ($649)</u>

Petitioners offered no evidence to substantiate that they paid for legal and professional services for 2004.

(c) <u>Supplies ($2,813)</u>

Petitioners did not substantiate what items they purchased and deducted as supplies or their business purpose.

(d) <u>Tolls deducted as "Other expenses" ($85)</u>

Although tolls related to Mr. Kinney's employment may qualify as a deductible unreimbursed employee expense, petitioners did not prove how to allocate the tolls expense between driving for the Melaleuca activity and driving for Mr. Kinney's employment. Accordingly, none of the tolls may be deducted as an expense of the Melaleuca activity.

On the basis of the foregoing, we conclude that petitioners have not substantiated Melaleuca-related expenses in excess of $568.

2. <u>Unreimbursed Employee Expenses Erroneously Claimed on the 2004 Schedule C</u>

On the 2004 Schedule C petitioners claimed $484 of work clothes expenses. Mr. Kinney testified that for his employment he wore heavy denim and khaki shirts, steel-toed boots, safety glasses, and welding hats, and Mrs. Kinney wore scrubs to work. Clothing is a deductible expense only if it is required for the taxpayer's employment, unsuitable for general wear, and not worn for personal use. See <u>Hynes v. Commissioner</u>, 74 T.C. 1266, 1290

(1980); <u>Yeomans v. Commissioner</u>, 30 T.C. 757, 767 (1958).  Such costs are not deductible even if a taxpayer establishes that he would not have purchased the items but for the employment.  <u>Hynes v. Commissioner</u>, <u>supra</u> at 1290.

The receipts introduced into evidence to substantiate Mr. Kinney's work clothes expenses contain unclear abbreviated descriptions that do not allow us to determine what items were purchased.  With respect to Mrs. Kinney's work clothes, petitioners have not established that Mrs. Kinney did not receive any reimbursement for her work clothes.  The receipts presented to substantiate Mrs. Kinney's work clothes expenses describe the items purchased as "Comfort Wash Elastic-waist Pants", "Comfort Wash Checked Fashion Warm-up" and "Knit Polo Shirt by Jerzees".  Such descriptions are insufficient to establish that the clothes purchased are not suitable for general wear.  Petitioners did not argue any special circumstances that prevented the use of the clothes outside of work.  Accordingly, we disallow a deduction for work clothes for lack of substantiation.

Besides the work clothes expenses, the 2004 Schedule C also includes mileage and cellular phone expenses related to Mr. Kinney's employment at K & L Smith.  For the same reasons that we disallowed these deductions for 2003, we disallow car and truck and cellular phone deductions for 2004.

### 3. Expenses Related to the Prospective Welding Business

The record establishes that the following deductions claimed on the 2004 Schedule C related to Mr. Kinney's prospective welding business:

| Item on the 2004 Schedule C | Amount |
|---|---|
| Rent or lease | |
|   Vehicles, machinery and equipment | $273 |
|   Other business property | 7,500 |
| Repairs and maintenance | 676 |
| Tools | 400 |
|   Total | 8,849 |

As discussed above, section 162 allows a taxpayer to deduct ordinary and necessary expenses of carrying on the taxpayer's trade or business. See sec. 162(a); sec. 1.183-2(a), Income Tax Regs. For the expense to be deductible under section 162, however, the taxpayer's business operations must actually have commenced. See Jackson v. Commissioner, 864 F.2d 1521, 1525-1526 (10th Cir. 1989), affg. 86 T.C. 492 (1986). The taxpayer has not "'engaged in carrying on any trade or business' within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized." Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir.), vacated and remanded on other grounds 382 U.S. 68 (1965). Mr. Kinney never started operating the welding business; rather, he undertook preparatory steps, such as constructing a building and locating a

key client.[12]  Accordingly, the prospective welding business expenses are not deductible under section 162(a).

## III. 2003 Itemized Deductions

### A.    Home Mortgage Interest Deduction

Respondent disallowed the home mortgage interest deduction of $336 for lack of substantiation.  Section 163(h)(2)(D) allows a deduction for interest paid on a qualified residence.  Section 163(h)(4)(A)(i) further defines "qualified residence" as either the taxpayer's principal residence or another residence selected by the taxpayer and used as a residence.  Taxpayers must be able to substantiate the amount claimed.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Petitioners provided no documentation or other evidence to substantiate that they are entitled to a home mortgage interest deduction in excess of that allowed by respondent.  Accordingly, we sustain respondent's disallowance of the home mortgage interest deduction in excess of the $309 allowed.

---

[12]Petitioners did not argue that the prospective welding business expenses are startup expenditures eligible for amortization under sec. 195.  Even if they had, sec. 195(b)(1) requires a taxpayer to elect to treat startup expenditures as deferred expenses that may be amortized over a period of not less than 60 months, and the amortizaton period cannot begin any earlier than the month in which the active trade or business begins.

B.    Unreimbursed Employee Expenses[13]

In the notice of deficiency respondent disallowed $1,158 of unreimbursed employee expenses.  Respondent concedes that petitioners substantiated the union dues and other union assessment amounts as well as welding licenses expenses but maintains that the conceded amounts are projected to be less than the 2-percent limitation of section 67(a).  Petitioner failed to substantiate amounts in excess of those conceded by respondent. Accordingly, we disallow a deduction for unreimbursed employee expenses in excess of deductions conceded by respondent.

IV.  Other Matters

The Court's holding on the above adjustments, in turn, determines to what extent petitioners are entitled to the child tax credit for 2004 and whether petitioners are liable for self-employment tax.  These adjustments will be addressed in a Rule 155 computation.

V.   Accuracy-Related Penalty Under Section 6662

Respondent contends that petitioners are liable for the accuracy-related penalty on the grounds of (1) negligence or disregard of rules or regulations under section 6662(a) and (b)(1) for 2003 and (2) negligence or disregard of rules or

---

[13]We remind the parties that when making their Rule 155 calculations, miscellaneous itemized deductions must be adjusted for the 2-percent limitation.  See sec. 67(a).

regulations and substantial understatement of tax under section 6662(a) and (b)(1) and (2) for 2004.

Section 6662(a) and (b)(1) authorizes the Commissioner to impose a 20-percent penalty on the portion of an underpayment of income tax attributable to negligence or disregard of rules or regulations. Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence is strongly indicated where a taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit, or exclusion on a return which would seem to a reasonable and prudent person to be "'too good to be true'" under the circumstances. Sec. 1.6662-3(b)(1)(ii), Income Tax Regs.

Section 6662(a) and (b)(2) also authorizes the Commissioner to impose a 20-percent penalty if there is a substantial understatement of income tax. An understatement is substantial if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Respondent bears the initial burden of production with respect to petitioner's liability for the section 6662(a) penalty and must produce sufficient evidence indicating that it is appropriate to impose the penalty. See sec. 7491(c). Respondent has satisfied his burden with proof that in 2004 the amount of

understatement exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the return.  Respondent also met his burden of production with respect to negligence by establishing that petitioners did not maintain required records or substantiate deductions as required by the Code.

Because respondent has met his burden of production, petitioners must come forward with sufficient evidence to persuade the Court that respondent's determination is incorrect. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Petitioners did not do so.  Petitioners offered no credible evidence to establish that they should not be liable for the section 6662 penalty.  They failed to properly substantiate their home mortgage interest deduction and work clothes expenses and improperly claimed Schedule C deductions.

The accuracy-related penalty is not imposed with respect to any portion of the underpayment if the taxpayer can establish that he acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  Petitioners bear the burden of producing evidence to demonstrate reasonable cause under section 6664(c)(1).  We determine reasonable cause and good faith on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the taxpayer's effort to assess his proper tax liability.  Id.  The record does not establish that petitioners

had reasonable cause and acted in good faith.[14]  Therefore, we sustain respondent's determination to impose the 6662(a) accuracy-related penalty for 2003 and 2004.

We have considered all of the arguments raised by either party, and to the extent not discussed, we find them to be irrelevant or without merit.

To reflect the foregoing,

Decision will be entered under

Rule 155.

---

[14]A taxpayer's reasonable reliance on the advice of an independent professional adviser as to the tax treatment of an item may demonstrate reasonable cause.  Petitioners introduced no evidence to support a finding that Ms. Boyer was a competent tax professional.  They also introduced no evidence that they provided all information to Ms. Boyer or that they actually relied in good faith on Ms. Boyer's return preparation. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002).